KENNEDY, Judge (specially concurring). {33} I concur in this case; the law is clear, and Defendant participated in the circumstances just perfectly to justify her conviction. It is the role of the caseworker’s antipathy toward working with Defendant, apparently mutual, and its effect on the development of the facts in this case that creates a subplot worthy of note. {34} Joseph had been gone from CYFD custody for about ten days. The CYFD caseworker was informed by Joseph’s foster mother of his running away on the day it happened. Though she expected Joseph to come back to Defendant’s home, the caseworker never tried to contact Defendant to inform her of his disappearance or inquire whether Defendant had seen him, preferring to wait to see if he showed up in Lincoln County. The caseworker never sent the police to Defendant’s house until after Defendant called her. {35} Some three or four days after Joseph got to Defendant’s home, she called the CYFD caseworker. Rather than use the chance to ascertain whether Joseph had acted per her expectation, the caseworker’s testimony about the conversation was that Defendant was blaming her and CYFD for Joseph running away but “was not taking responsibility for why her children came into custody.” Since Defendant was also being abusive, the caseworker told her to come for a meeting to discuss the matter and “politely hanged up” on Defendant. The caseworker stated that she had not called Defendant because she had a hard time locating Defendant in the past; yet both Defendant and Joseph were at the address to which the caseworker unhesitatingly sent the police that evening. {36} Three things happened as a result of Defendant’s contacting the caseworker. The caseworker terminated the conversation when she tired of Defendant’s complaining about both the fact and quality of CYFD’s custody of Joseph without Defendant’s ever stating that Joseph was with her; the caseworker sent the police over to Defendant’s house; and the caseworker lied in court about Defendant admitting in the conversation that she had supplied the money for Joseph’s bus ticket from Las Cruces to Ruidoso when she knew the funds came from other sources. {37} Defendant’s telephone call to the caseworker was no occasion for the caseworker to worry about Defendant’s taking responsibility for the causes of her children being in CYFD custody. To pick that issue as a first recollection is tellingly a bureaucrat’s reaction. A mother taking responsibility for bad parenting is of secondary concern to the acute situation of a child missing from State custody. A child has been missing for ten days, his mother knows about it, and the caseworker can interject sufficiently to tell the mother to come down to the office. The caseworker has no concern to force the question of whether the mother knows of her child’s whereabouts and just remembers that mom doesn’t understand that she’s not a good mother overall. {38} Defendant had Joseph at her house for four days and violated the law in doing so. She has a history with CYFD’s removal of Joseph and is likely a very unresponsive and hard person to work with when it comes to her parenting skills. That is no excuse for an agent of the State not to work pre-emptively with the mother in a situation like this. Here, despite the caseworker assuming that Joseph would come back to his mother, the person administering the terms of Joseph’s State custody did nothing for a week to ascertain Joseph’s whereabouts or try to notify his mother of her son’s absence.